# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MICHAEL FRANCIS SUAREZ,

                            3:16-cv-02732-HBF

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

---

**APPEARANCES:**

JOANNE GARDNER
JOANNE GARDNER, ESQUIRE
14 LENAPE ROAD
FLEMINGTON, NJ 08822
    On behalf of Plaintiff

TIMOTHY PATRICK REILEY
SOCIAL SECURITY ADMINISTRATION
REGION III
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA 19101
    On behalf of Defendant

**FITZSIMMONS**, Magistrate Judge

## OPINION

Plaintiff Michael Francis Suarez brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), seeking review of a final decision of the Acting Commissioner of Social Security who denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 <u>et seq</u>.

("the Act"). Plaintiff has moved for an award of disability benefits or, in the alternative, to reverse the case and remand for a rehearing. The Commissioner has moved to affirm.

For the reasons that follow, the Commissioner's decision is affirmed.

## I. ADMINISTRATIVE PROCEEDINGS

On December 10, 2012, plaintiff, Michael Francis Suarez, protectively filed an application for DIB, with an alleged onset date of disability of March 1, 2012. [Certified Transcript of the Record, Compiled on July 21, 2016, Doc. #9 (hereinafter "Tr.") 83]. Plaintiff alleged disability due to "spinal injury-cracked vertebraes-2 herniated discs; depression; nerve damage-extends through legs to feet; and feet feel like [they are] on fire." [Tr. 136, 146]. His DIB claim was denied initially on April 30, 2013, and upon reconsideration on July 15, 2013. [Tr. 136-44, 146-55]. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on July 24, 2013. [Tr. 83].

On February 27, 2015, Administrative Law Judge ("ALJ") Marguerite Toland held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 103-35]. Vocational Expert ("VE") Mary Ann R. Maraca testified at the hearing.

[Tr. 130-34]. On May 29, 2015, the ALJ found that plaintiff was not disabled, and denied his claim. [Tr. 83-99]. Plaintiff filed a timely request for review of the hearing decision on June 29, 2015. [Tr. 78]. On May 17, 2016, the Appeals Council denied review, thereby rendering ALJ Toland's decision the final decision of the Commissioner. [Tr. 1-4]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

## II.  STANDARD OF REVIEW

The standard of review for this Court is whether the ALJ's decision is based on substantial evidence in the record as a whole. 42 U.S.C. §405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988).

A reviewing court "must consider the (1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). It "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F. 2d 700, 705-06 (3d Cir. 1981); see Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.")(citing Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir. 1999)). "In the absence of such an indication the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id.

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. The scope of review is limited to determining whether the

4

Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the circuit court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence); Plummer, 186 F.3d at 427. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Suarez must demonstrate that he is

unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limits your physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if person is disabled. See 20 C.F.R. §404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her

age, education, work experience and residual functional
capacity ("RFC"). 20 C.F.R. §404.1520(a)(4)(i-v) ;20 C.F.R.
§416.920(a)(4)(i-v).

Between steps three and four, the ALJ must also assess a
claimant's RFC. RFC is defined as "that which an individual is
still able to do despite the limitations caused by his or her
impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112,
121 (3d Cir. 2000) (citations omitted); 20 C.F.R. §404.1545
(a)(1) ("Your residual functional capacity is the most you can
still do despite your limitations. We will assess your
residual functional capacity based on all the relevant
evidence in your case record."); see also 20 C.F.R. §416.945
(a)(1). In making this assessment, the ALJ considers all of
the claimant's medically determinable impairments, including
any non-severe impairments identified by the ALJ at step two
of his or her analysis. 20 C.F.R. §§404.1545(a)(2),
416.945(a)(2).

The disability determination involves shifting burdens of
proof. The claimant bears the burden of proof at steps one
through four. If the claimant satisfies this burden, then the
Commissioner must show at step five that jobs exist in the
national economy that the claimant can perform. Mason v.

Shalala*,* 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Toland concluded that plaintiff was not disabled under the Social Security Act. [Tr. 83-95]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 1, 2012. [Tr. 85].

At step two, the ALJ found that plaintiff had lumbrosacral spondylosis without myelopathy, degenerative disc disease of the lumbar spine, mild left peroneal neuropathy of the fibular head, lumbar radiculopathy, and mild diffuse coronary disease affecting the right coronary artery with mild to moderate ventricular hypertrophy, all severe impairments under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 87]. The ALJ

specifically considered Listings 1.04 (disorders of the

spine), 4.04C (coronary artery disease), and 11.14 (peripheral

neuropathy )[Tr. 87-88].

Before moving on to step four, the ALJ found plaintiff

had the RFC

> to perform light work as defined in 20 CFR
> 404.1567(b), except he can stand/walk up to six
> hours per day but no more than one hour at a time
> and then would need to sit/shift positions for five
> minutes per hour while remaining on task. He can
> occasionally stoop, and he can occasionally climb
> ramps and stairs. He cannot climb ropes, ladders or
> scaffolds. He must avoid concentrated exposure to
> dust, fumes, temperature extremes and pulmonary
> irritants. He would be off task 5% of the workday in
> addition to normal breaks.

[Tr. 88].

At step four, the ALJ found plaintiff was unable to

perform any past relevant work. [Tr. 93]. At step five,

after considering plaintiff's age, education, work

experience and RFC, the ALJ found that jobs existed in

significant numbers in the national economy that

plaintiff could perform. [Tr. 94-95].

**V.    DISCUSSION**

On appeal, the plaintiff contends that the ALJ erred in

in her application of the treating physician rule and the step

five evaluation.

The Court will address each of plaintiff's arguments in turn.

## A.   The ALJ Correctly Applied the Treating Physician Rule

Plaintiff contends that because the ALJ erred in her application of the treating physician rule, the residual functional capacity assessed was not based on substantial evidence. He argues that the ALJ erroneously relied on the opinions of the state reviewing non-examining physicians over his treating physicians, Dr. Barry Grabelle and Dr. Bruce Rosenblum.

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the

treating source's opinion is <u>not</u> given controlling weight, the
ALJ considers the following factors in weighing the opinion:
length of treatment relationship, frequency of examination,
nature and extent of the treatment relationship, relevant
evidence used to support the opinion, consistency of the
opinion with the entire record, and the expertise and
specialized knowledge of the source. <u>See</u> 20 C.F.R.
§§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security
Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2,
1996). If the treating physician's opinion is not supported by
objective medical evidence or is inconsistent with other
substantial evidence in the record, the ALJ need not give the
opinion significant weight. <u>See</u> <u>Plummer v. Apfel</u>, 186 F.3d
422, 429 (3d Cir. 1999)("An ALJ may reject a treating
physician's opinion outright only on the basis of
contradictory medical evidence, but may afford a treating
physician's opinion more or less weight depending upon the
extent to which supporting explanations are provided.");
<u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981)("We are
also cognizant that when the medical testimony or conclusions
are conflicting, the ALJ is not only entitled but required to
choose between them.... [W]e need from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

Plaintiff first argues that the ALJ erred in assessing "little weight" to the opinions of his treating physicians, Dr. Barry Grabelle and Dr. Bruce Rosenblum. [Doc. #13 at 12-15].

### Dr. Barry Grabelle

The ALJ stated that she gave "little weight to Dr. Grabelle's assessments because they are check off forms, and he provided very little supporting explanation, and his opinion is inconsistent with the overall record, including the claimant's reported activities of daily living." [Tr. 91].

Dr. Grabelle completed two medical statements, in January 2013 and February 2015. [Tr. 312, 384]. In January 2013, Dr. Grabelle opined that plaintiff had the following restrictions: he could stand/walk two hours of an eight hour workday; no sitting limitation was noted; he could occasionally and

frequently lift twenty pounds; occasionally bend and stoop; never balance or climb stairs; and constantly climb ladders. [Tr. 312]. The doctor estimated that plaintiff would be absent from work due to his condition more than four days a month and found that plaintiff could work no hours per day. Id.

On February 24, 2015, Dr. Grabelle's opinion included further functional restrictions: plaintiff could stand/walk and sit for two hours of an eight hour work day; occasionally and frequently lift five pounds; no restrictions using his hands and arms for repetitive actions were noted; occasionally bend, stoop, balance and climb stairs; and never climb ladders. [Tr. 384]. The doctor estimated that plaintiff would not be absent each month from work due to his condition and found that plaintiff could work "no[]" hours per day. Id. (emphasis added).

Defendant correctly points out that these opinions are not consistent with one another. Compare Tr. 312, with Tr. 384; see 20 C.F.R. §404.1527(c)(4) ("Consistency. Generally the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Indeed, plaintiff's lifting capacity dropped from twenty pounds to five pounds, while other abilities improved,

such as balancing or climb stairs to occasionally from never; and plaintiff's projected number of monthly work absences sharply declined from more than four to zero. [Tr. 312, 384].

The ALJ's finding that Dr. Grabelle's treatment notes do not support his January 2013 and February 2015 opinions is supported by substantial evidence. See 20 C.F.R. §404.1527(c)(3)("Supportability. The more a medical source presents relevant evidence to support an opinion...the more weight we will give that opinion."). Here, plaintiff's treating relationship dates to December 2007 and his file contains handwritten treatment notes through January 2014,[1] along with copies of blood work and other diagnostic testing. See Tr. 343-44. The treatment notes, handwritten on lined paper, are brief entries of weight, blood pressure readings, lab and/or test orders, prescription medication orders/renewals and referrals to specialists. [Tr. 344-45]. Dr. Grabelle's treatment notes do not contain assessments of functional limitations. Id. After the alleged onset date of disability, March 1, 2012, Dr. Grabelle treated plaintiff

---

[1] Mark Cattrel, R.P.A.-C, from Premier Pain Center ("PPC") began treating plaintiff in January 2015. P.A. Cattrell noted on intake that plaintiff's "PCP is retiring and pt requires PCP to take over prescribing his tramadol." [Tr. 395].

approximately eight to ten times.[2] [Tr. 343]. These records

offer no insight into plaintiff's exertional limitations to

support Dr. Grabelle's opinions. [Tr. 91 (ALJ finding that Dr.

Grabelle's opinion is inconsistent with the overall

record....”). As set forth below, other objective medical

evidence and plaintiff's reported activities of daily living

support the ALJ's assessment of "little weight" to Dr.

Grabelle's opinions.

Dr. Bruce Rosenblum, Neurologist

Similarly, the ALJ gave "little weight to Dr. Rosenblum's

assessment because it is just a check off form, and his

treatment notes do not indicate the claimant having such

significant exertional limitation, as well as, the claimant's

reported activities of daily living, which are fairly normal."

[Tr. 92].

On February 24, 2015, Dr. Bruce R. Rosenblum, plaintiff's

neurologist, opined that plaintiff had the following

restrictions: he could stand/walk and sit less than two hours

_____

[2] There are treatment entries from December 2007 through
December 20, 2010. The two entries after December 20, 2010,
are not clearly legible, "9/27" followed by "11/_." The Court
assumes these visits to have taken place in 2012 although they
could have occurred in 2011, prior to the alleged onset of
disability date of March 1, 2012. [Tr. 343].

of an eight hour work day; occasionally lift fifteen pounds; frequently lift five to ten pounds; frequently use his hands and arms for repetitive action; occasionally bend, stoop, balance and climb stairs and never climb ladders. [Tr. 385]. The doctor estimated that plaintiff would be absent more than four days a month from work due to his condition and found that plaintiff could work no hours per day. Id.

The ALJ's finding that Dr. Rosenblum's treatment notes do not support his February 2015 opinion is supported by substantial evidence. The record contains treatment notes for only three visits: November 12, 2013; December 9, 2013; and February 19, 2015. [Tr. 339, 338, 479]. At the initial appointment in November 2013, plaintiff's prior MRI was unavailable. Dr. Rosenblum's impression was lumbar radiculopathy. He recommended an updated MRI "prior to revaluation in determination of further course of action." [Tr. 339]. At a follow up appointment on December 9, 2013, Dr. Rosenblum noted that the "MRI of the lumbar spine shows a central and left paracentral L5-S1 disc herniation with anterior distortion by the disc of the left S1 nerve root."[Tr. 338].[3] Dr. Rosenblum "extensively discussed...the

_____

[3] A November 25, 2013, MRI of plaintiff's lumbar spine showed a

16

risks, benefits, options and possible outcomes with regards to micro lumbar discectomy." [Tr. 338]. Plaintiff indicated he would consider his options and get in touch if would like to proceed with this option. [Tr. 338]. Plaintiff's third and last office visit with Dr. Rosenblum was on February 19, 2015. [Tr. 479]. The doctor's review of a recent EMG study showed "only left peroneal neuropathy. [Plaintiff] has low back pain which supersedes pain radiation into the legs from the back." [Tr. 479]. "CT of the lumbar spine and x-rays of the lumbosacral spine were also reviewed. MRI of the thoracic spine revealed no major occlusion of the spinal canal or neural foramen. On examination he has no new objective focal neurologic findings." [Tr. 479]. The doctor indicated that plaintiff was going for a discogram with Dr. Li and that plaintiff would follow-up thereafter with Dr. Rinkus "regarding the possible utility of an arthrodesis [fusion] for the further treatment of his disorder...." [Tr. 479]. Indeed,

---

"moderate sized central and left paracentral disc protrusion at L5-S1 level which abuts and posteriorly displaces the left S1 nerve root centrally." Without significant spinal canal stenosis, no mass effect, or significant foaminal encroachment, related to the exiting left L5 nerve root. The MRI also revealed a disc bulge and a small central annular tea at L4-L5, and a very small disc bulge at T12-L1 level, both without significant spinal canal stenosis or foraminal encroachment. [Tr. 341].

from the February 17, 2015, CT scan referenced in Dr. Rosenblum's treatment note, the radiologist found "[m]ild degenerative disc changes of the lumbar spine without compression fracture or subluxation. No gross central stenosis or neural foraminal narrowing. Minimal posterior disc protrusions of the lower lumbar spine...." [Tr. 481]. These records offer no insight into plaintiff's exertional limitations to support Dr. Rosenblum's opinion. [Tr. 92 (ALJ finding that Dr. Rosenblum's "treatment notes do not indicate the claimant having <u>such</u> significant exertional limitations.")(emphasis added)]. As set forth below, other objective medical evidence and plaintiff's reported activities of daily living support the ALJ's assessment of "little weight" to Dr. Rosenblum's opinions.

Defendant correctly points out that the ALJ appropriately weighed the nature of the Medical Source Statement forms requiring the doctors to check-off or circle a claimant's limitations. "[C]hecklist forms such as [Drs. Grabelle and Rosenblum's] report, which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a

disability analysis." <u>Smith v. Astrue</u>, 359 F. App'x 313, 316

(3d Cir. 2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065

(3d Cir. 1993); <u>Prokopick v. Comm'r of Social Security</u>, 272 F.

App'x 196, 199 (3d Cir. 2008) ("the ALJ was entitled to accord

lesser weight to [the doctor's] opinion because it was

provided in a check-box form and he did not provide any

reasons in support of his various conclusions."); <u>Drejka v.</u>

<u>Comm'r of Social Security</u>, 61 F. App'x 778, 782 (3d Cir.

2003)("The ALJ was entitled to review the record in totality

and to discount the treating physician's

opinion...[claimant's] treating physician made the

determination that she was disabled only in a form report. We

have characterized such a form report, in which the

physician's only obligation was to fill in blanks, as "'weak

evidence at best.'")(quoting <u>Mason</u>, 994 at 1065).

The ALJ's finding that the objective medical evidence

does not support the opinions of Dr. Grabelle and Dr.

Rosenblum is supported by substantial evidence. "[A] treating

physician's opinion is accorded controlling weight only if the

ALJ finds that the opinion is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence [in

the] case record.' 20 C.F.R. §404.1527(d)(2)." Smith, 359 F.
App'x at 316. "The law is clear... that the opinion of a
treating physician does not bind the ALJ on the issue of
functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2
(3d Cir. 2011).

Here, the ALJ properly evaluated all the medical findings
and evidence in discounting the treating physicians' opinions.
See 20 C.F.R. §§404.1527(d)(1)(2), 416.927(d)(1)(2). A review
of the record demonstrates that these doctors' opinions are
inconsistent with treatment records showing normal strength in
the upper and lower extremities, and full range of motion
upper and lower extremities. See e.g. Tr. 318-21 (Dr.
Napolitano's Consultative Medical Examination); Tr. 286 (Dr.
Glasser's treatment record); Tr. 324 (Dr. Wm. Dennis Coffey
Consultative Mental Status Examination); Tr. 336, 359, 363
(Dr. Francisco Del Valle treatment note); Tr. 396, 463-64
(Mark Cattell, R.P.A.-C treatment records); Tr. 401, 438
(Peter P. Barcas, D.O. treatment records); Tr. 407-08 (2011
EMG Nerve Conduction Study unremarkable).

Objective medical testing conducted in 2015 before the
ALJ's ruling also support her findings. A MRI from January 6,
2015 found,

> 1. Disc bulge and a small central and left
> paracentral disc protrusion, L5-S1 level. This is
> improved compared to the previous study, at which
> time there was a moderate-sized disc protrusion,
> which displaced and abutted the left SI nerve root.
> There is no visible contact nor displacement of the
> left S1 nerve root currently. There is no spinal
> canal stenosis or significant foraminal encroachment
> at this level.
> 2. Annular tear and disc bulge at the L4-L5 level,
> not significantly changed, without significant
> spinal canal stenosis or nerve root compression.
> 3. No significant interval change in tiny disc bulge
> at T12-L1 level.
> No acute abnormality noted.

[Tr. 475-76 (emphasis added)]. An electrodiagnostic study

dated January 29, 2015, showed "evidence of chronic lumbar

spasm without definite radiculopathy in the lower

extremities," with conduction evidence for mild left peroneal

neuropathy at the level of the fibular head without

denervation in peroneal muscles. [Tr. 376 (emphasis added)]. A

CT scan on February 17, 2015, showed "[m]ild degenerative disc

changes of the lumbar spine without compression fracture or

subluxation. No gross central stenosis or neural foraminal

narrowing. Minimal posterior disc protrusions of the lower

lumbar spine...better characterized on prior MRI." [Tr. 481

(emphasis added); see Tr. 91-92 (ALJ discussing MRI showing

"no significant spinal stenosis or foraminal encroachment and

EMG studies showing "no evidence of radiculopathy in the lower

extremities.")].

The ALJ also determined that plaintiff's reported
activities of daily living did not support the limitations
found in Drs. Grabelle and Rosenblum's medical statements and
undermined plaintiff's reported functional limitations due to
pain. [Tr. 91, 92]. In January 2013, plaintiff reported that
in a typical day he showered, fed animals (cat, dog and
horses), food shopped or ran errands, did yard work or
housework, and made dinner. [Tr. 242-43]. He indicated he had
no problem with personal care, made all his meals, and did
some house cleaning and light yard work, including mowing.
[Tr. 243-44]. He reported going out daily, driving a car and
shopping for food and clothing approximately once a week for
an hour. [Tr. 244-45]. Hobbies included watching T.V., car
repairs, basketball, football and yard work. "T.V. daily,
sports-2 or 3 times a month-good at playing sports, enjoy
keeping yard nice." [Tr. 246]. He stated his condition
precluded doing sports anymore, certain yard work, cleaning up
after horses (shoveling), work on cars and he socialized less
often. [Tr. 246, 249]. Plaintiff estimated he could lift "no
more than 20 pounds." [Tr. 247].

In April 2013, plaintiff reported he did his own

cleaning, cooking and shopping, "I'm not an invalid. I just can't do tower work and confined space and all that." [Tr. 324]. He reported he has a lot of friends, rides a motorcycle 3 to 4 times a year, has a driver's license and is able to drive. [Tr. 324].

At the ALJ's hearing in February 2015, plaintiff testified that he lived in a two story house and had no limitations taking the stairs; he also stated he had no limitations driving. [Tr. 111]. He testified that he can sit comfortably for fifteen minutes, stand for about a half hour, walk comfortably for two to three blocks. [Tr. 120]. He was able to kneel and bend over, but not crawl. [Tr. 121]. He described a typical day starting with a shower and coffee, watching his wife feed the horses, riding to the store, cooking all the meals and watching television shows. [Tr. 122]. He testified that he can do dishes, take out the trash, concentrate on T.V., use a computer, participate in some social activities at the Moose Lodge and/or Amvets, and use a riding mower, but is unable to vacuum, garden, ride horses or motorcycles, or play volleyball. [Tr. 122-25].

There is substantial evidence to support the ALJ's finding that "claimants subjective complain[t]s are

disproportionate to the medical evidence." [Tr. 92]. For example, the ALJ correctly found that "examinations failed to show any residuals of lumbar radiculopathy in the form of muscle weakness, atrophy, reflex depression or sensory loss." [Tr. 92, (citing 15F, 1F, 6F, 9F); see, Tr. 286 ("He is very muscular...neurologically and neurovascularly intact for strength, sensation, and reflexes."); Tr. 319 (strength 5/5 to upper and lower extremities, full grip and pinch strength, no focal neurological deficits noted, full range of motion of the upper and lower extremities); Tr. 324 (plaintiff reporting he does all his cleaning, cooking and shopping; "I'm not an invalid;" he has a lot of friends, rides a motorcycle 3-4 times a year, drives a car, travels independently, works independently); Tr. 336 (noting symmetrical deep tendon reflexes, no pathologic reflexes found, sensory testing intact for lower extremities, motor strength testing is 5/5 for both legs); Tr. 339 (negative neuromuscular); Tr. 359 (strength and tone: +5/5 both lower extremities proximal and distal, normal negative straight leg raise test both legs); Tr. 395-96 (tramadol takes the "edge off of his pain;" Neuro-Motor: 5/5 bilateral L.E.; Neuro-Sensory: pinprick sensation intact in bilateral L.E.).

Dr. Elena Napolitano's report also supports the ALJ's RFC finding. In April 2013, when he was examined by Dr. Napolitano, plaintiff was not on any pain medication, denied bowel or bladder incontinence and did not use a cane or walker. [Tr. 318]. Plaintiff reported that he opted not to do epidural treatments or any invasive treatment. [Tr. 318]. Dr. Napolitano observed that plaintiff ambulates at a reasonable pace, gait without the use of a handheld assisted device; walks on heels and toes; squats; strength was 5/5 to the upper and lower extremities; full grip strength and pull strength; full range of motion to his upper and lower extremities; independent to transfer off examination table. [Tr. 319]. The doctor's diagnostic impression confirmed chronic low back pain with

> reproducible radicular pain in the S1 distribution. However, there was no focal neurological deficits at the time. He was independent with ambulation and transfers. Despite...limitations, I anticipated this patient could carry and lift at least 20-25 pounds. There was no need for any orthotics or handheld assisting device. The patient does drive and is independent with activities of daily living.

[Tr. 319].

In January 2015, plaintiff reported that medication "takes the edge off his pain" and in May 2015, he reported that medication offered "tolerable pain relief and allows him

to function to a greater degree without any noted adverse affects." [Tr. 395, 464; see Tr. 370 (in September 2013, plaintiff reported mild improvement from epidural injections)].

Substantial evidence supports the ALJ's finding that plaintiff's subjective complaints are disproportionate to the objective medical evidence.

### State Agency Physicians

Plaintiff also takes issue with the ALJ's assessment of "great weight" to the 2013 opinions of the state agency physicians, Drs. Przybyla and Kahanowicz, which he contends was "complete error." [Tr. 93, 141-42, 152-53, Pl. Brief at 9-11]. He argues that the non-examining doctors based their opinions "on only a minimal portion of the evidence, mostly of which was an old MRI and a one-time consultative examination." [Pl. Brief at 11].

The Third Circuit Court of Appeals has held that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Chandler v. Comm'r of Soc. Sec.,

667 F.3d 356, 361 (3d Cir. 2011). Thus, "it is not unexpected that the ALJ may have more evidence to review than the state agency did." Golzak v. Colvin, No. 3:12CV2247, 2014 WL 980752, at *10 (M.D. Pa. Mar. 13, 2014).

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act" and, as the Third Circuit has held, the opinions of non-examining sources can override the treating sources' opinions provided they are supported by substantial evidence in the record. SSR 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996); Chandler, 667 F.3d at 361-62 (noting that in making a disability determination the ALJ made detailed findings of the claimant's medical history and properly explained the weight given to the state agency opinions, the doctor's opinions and the credibility of the claimant). "[A]dministrative law judges must consider findings of State agency medical and psychological consultants, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." Golzak, 2014 WL 980752, at *10 (citing 20 C.F.R. §404.1527(e)(2)(I)). Plaintiff fails to articulate how the

opinions of the state reviewing non-examining physicians are
unsupported by the record, except to state that these
physicians did not examine him and only reviewed portions of
the medical records. The Court finds this argument without
merit

The Court notes that the ALJ assessed additional
functional limitations than those assessed by the state agency
physicians, impacting plaintiff's ability to perform light
work. [Tr. 88]. The ALJ's RFC determination is supported by
substantial evidence of record. The ALJ conducted a detailed
review of the relevant evidence of record, including
plaintiff's testimony, medical test results, treatment notes
from plaintiff's medical providers, consultative examiners'
reports and the medical opinions of record. [Tr. 88-93].

Accordingly, the Court finds that the ALJ's findings were
not error and were supported by substantial evidence.

**B.    There is Substantial Evidence Supporting the ALJ's Step
Five Determination**

Plaintiff argues that the ALJ erred at step five, where
the burden shifts to the Commissioner to prove that there is
some other kind of substantial gainful employment the claimant
is able to perform. Asked whether there are jobs that the
plaintiff can perform, the VE testified that given the RFC

determined by the ALJ, the plaintiff would be able to perform occupations such as supervisor, structural metal products; template marker for tracks; and inspector and tester. [Tr. 132-33].

Plaintiff first contends that the ALJ erred at step five because the "vocational expert's testimony conflicted with the ALJ's residual functional capacity." [Pl. Brief at 15-17]. He argues that "[a]ll of the jobs the vocational expert cited,...require the claimant to be in a work environment of dust, fumes, pulmonary irritants, and temperature extremes." [Pl. Brief at 16]. The ALJ squarely addressed whether these jobs could be performed with "concentrated exposure to dust, fumes, and pulmonary irritants, and temperature extremes." [Tr. 132 (emphasis added)]. In response the VE stated that all three jobs would be available with those limitations. [Tr. 132-33]. Plaintiff offers no authority for his argument that these jobs "require the claimant to be in a work environment of dust, fumes, pulmonary irritants, and temperature extremes." [Tr. Pl. Brief at 16 (emphasis added)]. Defendant correctly argues that these jobs identified by the ALJ do not require concentrated exposure to temperature extremes or atmospheric conditions. [Def. Brief at 18 (emphasis added)

(citing Dictionary of Occupational Titles, Supervisor,
Assembly Department, DICOT 809.130-010, 1991 WL 681532 (Jan.
1, 2016) ("Exposure to Weather," "Extreme Cold," "Extreme
Heat," "Wet and/or Humid," "Atmospheric Cond.," and "Toxic
Caustic Chem.," were "Not Present - Activity or condition does
not exist."); Template Maker, Track, DICOT 809.484-014, 1991
WL 681550 (Jan. 1, 2016)(same); and Inspector and Tester,
DICOT 809.687-018 1991 WL 681565 (Jan. 1, 2016)(same).

Finally, plaintiff argues that an independent VE,
retained by plaintiff after the ALJ's decision, found his
skills non-transferable and that the testifying VE erred in
testifying otherwise. [Tr. 94, 132]. Plaintiff appended a
letter dated July 18, 2015, from an independent VE to his
brief to the Appeals Council to support his argument that the
"vocational expert's testimony at the hearing was inaccurate
as to whether Mr. Suarez's employment had transferrable
skills" to other jobs. [Tr. 280-82, 283]. This independent
evidence post-dates the ALJ's May 29, 2015 ruling and is not
properly before the Court. Moreover, the Court notes that
plaintiff did not object or challenge the VE's testimony on
transferability of skills at the ALJ's hearing.

Evidence not submitted to the ALJ is only reviewable by

the district court as a basis for remand to the Commissioner for further proceedings pursuant to sentence six of 42 U.S.C. §405(g). The Third Circuit has "recognized that evidence first presented to the district court must not only be new and material but also be supported by a demonstration by claimant of 'good cause for not having incorporated the new evidence into the administrative record.'" Matthews v. Apfel, 239 F.3d 589, 592–93 (3d Cir. 2001)(quoting Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir. 1984)); see 20 C.F.R. §416.1470(a)(5) ("The Appeals Council will review a case if"…"the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."); Younge v. Berryhill, No. CV 16-5271, 2017 WL 2978758, at *15 (E.D. Pa. May 31, 2017)( "A district court may only order remand if the evidence satisfies three prongs: (i) the evidence is new and not merely cumulative of what is already in the record; (ii) the evidence is material: it must be relevant and probative, and there must be a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination; and (iii) there was good

cause why it was not previously presented to the ALJ."). Plaintiff has made no showing of good cause for failure to produce the evidence to the ALJ, and it will not be considered here.

Accordingly, the Court finds no error in the ALJ's reliance on the vocational expert's testimony in support of his determination at step five.

## VI. CONCLUSION

For the reasons stated, the decision of the Commissioner is therefore **AFFIRMED** and the Court is directed to enter judgment in favor of the defendant and instructed to close this case.

An accompanying Order will issue.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #16] on April 6, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED this 2nd day of May 2018.

                              /s/
                              _____
                              HOLLY B. FITZSIMMONS
                              UNITED STATES MAGISTRATE JUDGE